The next case on our calendar is Lee Chan v. Merrick Garland Lee Chan v. Merrick Garland Lee Chan v. Merrick Garland May you please record? You may proceed. Stuart Alden for the petitioner, Lee Chan. Good morning, Your Honor. Good morning, Miss Lee. Your Honor, my client, Mr. Chan, had an asylum proceeding for which he was ordered removed. His wife then had an asylum proceeding for which she was granted. And I should say this, he was ordered removed, but he appealed. The BIA found him credible and sent him back down to the immigration judge who denied the case again. His wife, on a separate case from him, was found credible and granted asylum. His wife then applied for an I-730 derivative asylum for Mr. Chan, and that was granted. When the application was made for the I-730 derivative asylum, did your client disclose that he was the subject of an order of removal? Your Honor, I'm not positive, but it doesn't matter in immigration law. Well, go ahead. Explain why not. I mean, you'd think it would, wouldn't you? No, I've done plenty of those, and it's never even come up as an issue. Well, he was ordered removed in 2014. Correct. And he became a derivative asylee in 2016. Correct. What was he doing in between? He wasn't removed? He didn't leave? Your Honor, he appealed in between, and his case was remanded. And I don't know what the period of time was for the file, because he didn't appeal the second decision by the immigration judge. I don't know how much time went on before that, but a BIA appeal can go on a year and a half, two years. That's true. Okay. Go ahead. I'd like to ask about that appeal, but before we get there, the government said in its supplemental briefing that Mr. Chan received lawful criminal residence status in 2018. Is that true? That is correct, Your Honor. And I apologize for the point of the counsel. I didn't know that Mr. Chan had been granted his legal criminal residence status. That was the value of the supplemental briefing, wasn't it? How did he receive that? Had he received that, he applied for the immigration service based on the I-730 being granted. But if he has an ongoing removal proceeding, don't the regulations provide that the immigration court has exclusive jurisdiction to entertain a motion for adjustment of status or an application for adjustment of status? I'm sorry, Your Honor. I just want to fully understand your question. If he has an order of removal and he's before an immigration judge, don't the regulations say the immigration judge hearing the removal proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file? I disagree, Your Honor. There are certain circumstances where immigration does have exclusive jurisdiction. This would depend on how the person entered, whether they were an arriving alien, whether they entered without inspection. So there are proceedings where they would. There are proceedings where the immigration service can proceed with that. Even though he's before an immigration judge, you're saying the USCIS can grant him lawful permanent residence status in the middle of the removal proceedings? Correct, Your Honor. Okay. And is your position that the grant of lawful permanent residence status eliminates the order of removal or it still is there? Well, that's what the government told us, didn't they, in their supplemental brief. My statement, Your Honor, is that the order of removal is still there on it when it shouldn't be there. And before we even get to the legal permanent residence status, what he applied for the judge was asylum, and the judge either grants or denies the asylum application. And what he said with the I-730 is, I now have asylum. And at that point, even before a legal permanent residence card came into play, the judge should have just withdrawn the order of removal because he already had asylum. Was that application made to the immigration judge? Yes, it was, Your Honor. Why did he already have asylum? Derivatively? Derivatively, through his wife. And how would the immigration judge do that, through the sua sponte reopening? The attorney at the time filed a motion to reopen with the judge. Right, and so the motion to reopen, you don't dispute that that was out of time, right? I do dispute the timeliness of it, and I'll explain, Your Honor. Yes, it was not filed with – it was filed shortly after he received the I-730 approval. But that period of time had passed. This is the time of his appeals or in the timeliness for a motion to reopen. However, this is not a typical asylum case where a person is saying, hey, something has changed. Well, the statute says that you can excuse the untimeliness because of changed country conditions. It doesn't say because of a change in the alien's immigration status, does it? That is correct, Your Honor. So you think we should read that into the statute? We should create another exception to the statutory – Well, Your Honor, I'll give you a quick example. If we had someone who's denied on a case due to a criminal conviction, and five years later that criminal conviction is overturned, and then he goes back to the immigration court and says, I no longer have this conviction. So my case shouldn't have been denied in the first place. Is the court going to then say this is untimely? No. It's a matter of what happened at that time no longer applies, and it will be the same later. But what authority does the immigration judge have to do that? Well, Your Honor, they have the sui sponte authority to reopen the case. Right. So it is about the sui sponte authority, right? Yes. But we have no jurisdiction. The sui sponte authority is discretionary, right? Your Honor, it is discretionary, but not completely discretionary. As this court has held in cases of Mahmoud and also Centurion, that while it is a discretionary form of relief, if there are legal errors, those can be considered. And what's the legal error here? The legal error here is the immigration judge denied the asylum to someone who already has asylum from his wife. Well, did he get asylum? That's a legal error, right? Did he get asylum status derivatively? Yes. No. So why is he an LPR now? Which is he now? He's an LPR now. But you tell me he got asylum status. Well, Your Honor, after you get to asylum, within one year of that, he can apply to become a legal permanent resident. I see. And he did that? And he did that. And he's an LPR. That's correct. And if he had remained a derivative asylee, then his asylum would depend on his continuing to be married. Is that correct? Correct, Your Honor. So now it doesn't matter. He can get divorced. And not that he'd want to, but he could get divorced. And because he's a lawful permanent resident, he can remain anyway. So what's the issue? I thought the whole problem here was that he was only a derivative asylee and there was an order of removal, and therefore he couldn't go back to China where he said he would be persecuted, but put that aside. He wanted to go back to China and then come back again, and he couldn't because there was an order of removal. But now that he's a lawful permanent resident, why isn't he happy and why isn't this all over? Okay. He's not happy, Your Honor, because, first of all, I disagree with one of the things that you're asking. No, please. I'm asking a question. He said he could divorce now and it would be okay. And under the regulations on the advance parole, he would have to apply because he had the order of removal. He would have to apply for an advance parole to leave the United States. Why is the order of removal still in place after he became an LPR? That's what we're debating here today, Your Honor. Well, that makes sense, right? I guess no immigration court has vacated it. I mean, is there any reason to think that it would be eliminated? I understand it's probably not going to be enforced against him, so maybe you don't have a lot to complain about. But the BIA and the IJ, nobody has ever vacated the order of removal, right? No one's ever vacated the order of removal. And, Your Honor, it could be enforced against him, not because he's in the United States. However, if he does leave, he has to apply for advance parole to come back in. Or a refugee travel document, right? But that's what all asylees have to do, right? So even if he didn't have an order of removal and was an asylee, he would still need to apply for travel documents to leave the country intact, right? That's if he was an asylee, but he's a legal permanent resident now. And as a legal permanent resident, no, they don't have to apply for advance parole documents. Right, so then he doesn't have to apply for documents. So why, since he's not – so I guess I'm making two points. One is the way this case was briefed, he was an asylee. So I guess under that question, it seems like even if he had an order of removal, he would not be different from any other asylee because he would have to apply for the same travel documents. Now that he's a legal permanent resident, or now that we know that and we think that that might be true, doesn't that mean he wouldn't have to apply for those documents? Your Honor, to supplement the brief, he would need to apply for those documents. And not only that, he could be denied. And he could be denied entry coming back in under 212A, which I cited, under Border Patrol, if they decided to not let him back in for some reason, Your Honor. So this is a good time to hear from the government. You have two minutes for rebuttal. We'll hear what the government says about this. Good morning, Your Honors. I pledge allegiance to the flag of the United States and to the republic for which it stands, one nation, under God, indivisible, with liberty and justice for all. The court should dismiss this petition for rebuke because there is no final order, which is required under 8 U.S.C. 1252A1. There's no final order of what? Removal? Why isn't the order that's on, non-final though it may be, why isn't that just vacated? Well, in effect it's vacated, but on paper it exists. As if you had a void contract. It's void, nobody's going to use it, but it's there on paper. And that's exactly what we want. Is it void in the sense that if he leaves the United States and wishes to come back, he does not have to get any, he doesn't have to make any special arrangements with the Attorney General? So there's two parts to that question. One, in the LPR, he does not need to file a form to get permission to leave the country and come back. And if he's an asylee, if he's a derivative of an asylee, he's the same position as any other derivative of an asylee. But he's both, but he's both, right, seemingly. So he's not both anymore, Your Honor. All right, so which is he? He's a lawful permanent resident. And therefore, he does not need a form or any special paperwork, any more than I do, to leave the country and return. But he brought this action to remove the removal order. Isn't that why we're here? So Petitioner would like to have that removal order disappear. Expunged, let's say. Expunged, basically. But there is no need for it. And the agency did not abuse its discretion in denying the motion to reopen for the three dispositive reasons that I listed. But can I ask before we get to that just the question that I asked before? So the regulations provide that the immigration judge hearing the removal proceeding has exclusive jurisdiction to adjudicate an application for adjustment of status that an alien might file. And we've held before that USCIS can't grant an adjustment of status while there are pending removal proceedings before an immigration court. So how could he get adjustment of status from USCIS while this case was before an immigration court? I don't know how, but he did. And there's no indication that USCIS wants to backtrack on his self-jurisdiction. Well, but is it possible that USCIS did that without jurisdiction? You know, if it was challenged, I think that could be an issue, but it was never challenged in this case. But it could be challenged in the future? Well, it's not challenged in this case. But if the government decided that for some reason he became undesirable or whatever it is, that they wanted to undo the lawful permanent resident grant by the USCIS, could they undertake to do that on the ground that USCIS had no jurisdiction? Because it was an ongoing immigration proceeding? Proceeding before the immigration court? I believe hypothetically that could happen, but there's no indication that it's going to happen in this case. I mean, he was adjusted in August of 2018.  And there's nothing in this record that shows that there's any interest by the Department of Homeland Security to rescind his LPR status. There's nothing here. But he has reason to be uncertain about the security of his status, correct? Well, because of the removal order. The removal order is basically no. Because he's an LPR, if the Department of Homeland Security wants to remove him, they have to put him into new removal proceedings and he has to get another order. So, if that becomes an order in 2014, it will have no effect on him. What if he just goes to Canada and tries to come back as an LPR, and they look up his file at the border and say, oh, there's a removal order. We're going to detain you. Wouldn't that happen? Couldn't that happen? In the realm of possibility, it could happen. But if they were to take him to secondary and they were to look at his record on the database and realize he's an LPR and there's none there, they will not keep him or detain him because he has that 2014 removal order. Like I said, that 2014 removal order became no as soon as he became an asylee, but then it became extra, extra no when he became an LPR. But if border security looked at his record, as I assume they can do right there at the border? That is correct. They would find the removal order, wouldn't they? Yes, but they would also see that he's a juridical asylee, who adjusted his status as a juridical asylee, so they will see that he is a green card holder, which trumps everything else. Oh, I see. So they would have to look at the two pieces of information, the removal order and the LPR status, and know that one trumps the other. Exactly. So they will see the removal order. What if they didn't know that? Is there a chance that they wouldn't know the hierarchy? They should know that. They should know that, right. But that's why you brought this action, so that it's not, it doesn't depend on the individual knowledge of border security agents. You know, in the realm of possibility, anything is possible, but in this case, he has, he has a welcome resident card. That will allow him to travel freely and come back. Regardless, regardless, even if there is some consequence to him having a final order of removal, is there any authority for him now, in this case, to get it vacated? No, not in this case, Your Honor. The thing is, once the petition became an LPR, it could have reached out to DHS and asked to file a joint motion to reopen, based on the LPR card, to say, hey, let's terminate this. But my understanding is that he informed the board that he was going to do that. You're saying he can? He can, but only on stipulation. Well, on stipulation with the Department of Homeland Security. Well, I mean, if two parties get together, they can just about do anything. Right. The question is, is there a procedural route that anybody has jurisdiction to order by which he can reopen the immigration proceedings if there's a sua sponte denial of his application to do so? Well, he can file another motion to reopen for sua sponte termination with his green card. But if they deny it sua sponte, we have no jurisdiction. That is correct, Your Honor. Correct. So you're saying he can file a joint motion to reopen, but it would still face all the obstacles that this motion to reopen faces. It's not as if that's changed country conditions, and so it would depend on sua sponte reopening, which depends on the discretion of the immigration court, right? That is correct, Your Honor. But there is an exception where there's a joint motion with the Department of Homeland Security and a petition. If there was a violation, the immigration judge would open it internally, because like the judge before said, both parties are in agreement. Well, that's why he brought this action, to try and get it reopened and remove the removal order. But it doesn't seem to work. Well, Your Honor, he did it on his own based on the derivative aside status. And in this case, the immigration judge denied it as a matter of discretion because the immigration judge found that the petitioner was not credible to blacks in this case. So on the jurisdictional question, can I just ask this question? So it sounds like what you're saying is there is a final order removal. It's technically on the books. It's just not going to be enforced because his lawful permanent residence status trumps it. So since our jurisdiction depends merely on the existence of a final order removal, why doesn't that mean we have jurisdiction, but he can't get relief? I apologize, Your Honor, I did not completely catch the last part of your question. It sounds like your argument is that there is a final order of removal because it's still on the books. It hasn't been vacated. It's just never going to be enforced. And so he doesn't have a lot to complain about. It still is on the books. Since our jurisdiction depends on the existence of a final order of removal, and there is a final order of removal, why doesn't that mean we have jurisdiction, at least insofar as the final order requirement is concerned, but he doesn't get relief for other reasons? So you are correct, Your Honor, that it is in the books, but it's not a final order of removal because it's not going to be used for relief. Do we have jurisdiction over the final order of removal if no timely petition is filed with us? Was a timely petition filed with us? There was no time. The petition for review was timely only insofar as the board did not, sorry, dismissal of his, sorry, affirmation of immigration judges did not have a second condition to be able to reach it in November 2019. So it's both number and time barred. That is correct. So the fact that there's a final order of removal doesn't give us any kind of jurisdiction to do anything this morning. That is correct. That's what she's telling us. I'm trying to do it now. But this is a real conundrum because we want to give some relief. We think he's entitled to some relief. Well, I don't know who's we. Well, I think he may be entitled to some relief, but I can't figure out a way to give it to him. Isn't that correct? If Judge Brewer is inclined to give a relief, that is correct. There is no avenue as stated in our brief petitioner's, I guess, motion to his, motion for his response at the opening, the provider's jurisdiction on that decision. With regards to his other cases for the opening, it is time barred, number barred, and tonight is a matter of discretion. It sounds like in response to Judge Jacobs' question, you said that because his final order of removal is final a long time ago, there isn't a timely review. You're saying even if he didn't have lawful permanent residence, that is, he wouldn't have jurisdiction because the final order of removal became final a long time ago? We'd never have jurisdiction over a reopening. Is that right? Right. But the court has jurisdiction over the agency's denial of his second motion to reopen. We do? Is that itself a final order of removal? I'm sorry, I didn't catch the last part. Is that itself a final order of removal? That is the final order of removal that the court is looking at and that the court indicated that it has jurisdiction to review. Okay, so you think we would have jurisdiction if, but for the lawful permanent residence status? That is correct, Your Honor. May I ask you one other question about the sua sponte reopening that's in this case? The regulation was amended to say that sua sponte reopening is limited to a decision to correct a ministerial mistake or typographical error in the decision or to correct a defect in service. That's what the current regulation says. So why doesn't that regulation just mean that even if the board was inclined to sua sponte reopen or the I.J. was, it wouldn't be able to do it for the reason that Shane is asking. I have to really clarify, Your Honor, that your audio was saved in and out during that question. Oh, sorry. So the department amended the regulation about sua sponte reopening to say the board may at any time reopen or reconsider a case in which it has made a decision on its own motion solely in order to correct a ministerial mistake or typographical error in that decision or to reissue the decision to correct a defect in service. And that was made applicable to all pending cases regardless of time. And so why doesn't that mean that even if the board wanted to reopen, the I.J. wanted to reopen, it didn't have the authority to sua sponte reopen for the reason that Shane is asking. Well, for sua sponte, Your Honor, the immigration judge would have authority to reopen, but here the immigration judge declined to. No, I understand, but the new regulation, the Attorney General adopted a regulation in 2021, I think, that said that the immigration courts don't have the authority to sua sponte reopen unless it's to correct a ministerial mistake or typographical error. Why isn't that, why doesn't that limit the relief that the I.J. could provide in this case? Your Honor, in this case, the decision was before the regulation changed, and even if, I have not seen. I know, but that regulation said the provisions of the rule relate to the restrictions on sua sponte reopening authority are effective for all cases regardless of posture on the effective date. I have not seen a sua sponte denial applying that new regulation to deny sua sponte relief. I've always seen sua sponte denials based on the failure to show exceptional circumstances. Obviously, if the board does have sua sponte, we don't see those cases. Thank you. Thank you, Your Honor. Mr. Altman, you have two minutes for rebuttal. Yes, thank you, Your Honor. Are we without jurisdiction to do anything? No, we do have jurisdiction, Your Honor. I'm talking about we, the Court of Appeals. Yes. Tell me what the source of it is. The source of it is, excuse me, Your Honor, sua sponte relief in this matter, as I mentioned, which you can review if it's a legal error, and as the judge stated, the new regulation is by the VA in this matter. And also, I would note— Sorry, I'm sorry. If it's a legal error, but here the district, the IJ said, I'm not going to grant reopening because I think it doesn't make any sense to facilitate his return to China where he thinks he's going to be persecuted, and therefore, there's no reason to reopen. That's not a legal error, right?  I disagree, Your Honor. First of all, it's a legal error because he's given asylum reasons to deny a person's authority to grant asylum. So it was not before him. And also, he is stating reasons why that person may not return to China. The case before this judge was eight years before, and he's a Falun Gong practitioner at the time. Would he be practicing Falun Gong in China? Are they still looking for him? I'm sorry. Now you're saying that there are changed country conditions, but I don't think that you made that argument. I think you said that the changed condition was that he's obtaining derivative asylee status. That's correct, Your Honor. No, for changed country conditions usually, Your Honor, it has to be showing an increase in the persecution of people. We're not stating that at all, Your Honor. What I'm saying is eight years went on from the time the first judge decided until the motion to reopen based on the second jury was denied. And he is using reasoning that went on eight years before without finding out that there was additional factual reasons. So what you're saying actually is that the IJ should have thought maybe he would not be persecuted if he returned to China because the reason he applied for asylum eight years ago might never be applicable. Well, the IJ should not have found it not credible based on his statement or use that But I'm sorry, but then you're saying maybe he wouldn't be persecuted. And the idea that he wouldn't be persecuted is the reason to reopen proceedings to keep him as president. I'm sorry, Your Honor. You're going in and out. You're going in and out. Oh, I'm sorry. So you're saying that the IJ should have thought that maybe he wouldn't be persecuted because so much time had elapsed and that would be a reason to reopen his asylum proceedings to give him asylum? No, Your Honor. I thought the IJ should have said this person has asylum already. There's no need for further back bonding. There's no reason for anything else. He already has asylum. Therefore, we'll reopen and terminate the case. That's all. And to go to this, the court was asking for relief on this matter. And there's a case in the Third Circuit, Your Honor. And it's Samuel Park. And what that case basically says is a settled course in review of abusive discretion towards to his property cases. And the site of the case is 846-633. And when you say by settled course, I can only tell you what I know as an immigration practitioner. And from doing these cases 20 years, this is probably the easiest application of immigration is you basically just send in the approval notice and the motion. And it's always been approved. And I don't know the statistics for it or how many are denied or how many approved. I can just tell you, other than this, I've never had this issue before. So I think there is. And this is both with the BIA and with judges. So I think there is a settled course in approving these cases. And where a person has already been granted asylum or illegal permanent residence cards, you get removal orders. But as counsel said, they're no longer in effect. And if they're no longer in effect, then you get removal orders. What is wrong with having a record that shows that there was a removal order because of adverse credibility concerning his practice of Falun Gong? That's in the record. Then the grant of derivative asylum. That's in the record. And the grant of a lawful permanent residence status. All of these three things happened. Why shouldn't there be a record of them? And, therefore, it seems to me I'm not sure we have any jurisdiction. And, frankly, I don't think your client has any problem. All of these three things happened. He lied about his Falun Gong practice after coming into the country without inspection. This is a matter of record. I don't know why that gets expunged. On what basis? Your Honor, that's not a matter of record. He didn't lie about his Falun Gong practice. Well, there was an adverse credibility violation. Well, it's referred to the Gracie Judge, the BIA, Ed Kravitz-Garland, the legal board. No, they are not according to my records. Yes, Your Honor. They remanded it back to the judge. To reconsider the adverse credibility determination. And then, in March of 2014, the IJ again denied all relief on credibility grounds, ordered him removed to China, and he did not appeal. Well, Your Honor. So, I mean, I'm not misstating this. And so there's a record of a thing that happened. Your Honor, I'm not saying there's not. There's always a course of proceedings and a record of what happened. But what has happened now is he has been granted legal permanent residence status in the United States. That's also in the record. All of this is in the record. But due to this order, it does affect him. And contrary to what counsel said, which she even put in her own brief, it does affect him. And he would need to have applied for advanced parole or a supplemental brief. Only if an error is made. If I come back into the country and I was born on this island, somebody could screw up and say, have you mixed up with somebody else, and detain me. That doesn't mean that I need to get clarification of my citizenship. But that's the only thing posited about any disability or problem your client has, is if somebody at the border makes a mistake. I'm sure they do. But they can make a mistake about anybody. But he should have to be put in that situation if he has been granted legal permanent residence status. He should have the same rights as any other legal permanent resident. What about what the government says that actually what you should do is file a point motion with the Department of Homeland Security to reopen and then you can get the order removal vacated. That's what he did. That's the case before. No, no, no. I'll clarify. There were two motions. One was a joint motion, which your Honor is referring to. That can be done, but he filed two motions with the court. Now, with the joint motion, the Department can simply just say no, and that's it. But that doesn't mean that you're going to get the motion. But given his permanent residence status, why would they say no? I don't know. It seems like a good reason to me to give it to them. But it does include a reason to bring it before the court as well, Your Honor. All right. I think we've reached that. But does it create an exception to the idea that we lack jurisdiction? I guess that's the question. But I think I have your arguments on that point. Your Honor, the court doesn't lack jurisdiction. This is a final order. The traffic county said, well, it has the effect of a final order on paper. Well, paper is what we go by. It says final order of removal. So that's what we have to go by, Your Honor. So it definitely is jurisdiction. And I believe there's suit from the authority to reopen this case. And it's not a typical asylum case where there's a change of circumstances, country condition. This is someone who's granted asylum. So once you have asylum, your order of removal should be taken away. Thank you. Thank you. Thank you both for a very good argument. We'll reserve decision.